## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 1:25-bk-11197-NWW** |
| **POOLE FUNERAL HOME** | ) | |
| **REAL ESTATE, LLC,** *et al.*, | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | **Jointly Administered** |
| | ) | |

---

## JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.

Roy Michael Roman
**RMR Legal PLLC**
70 N. Ocoee Street
Cleveland, TN 37311
Telephone:  (423) 528-8484
Facsimile:  (423) 717-5564
E-mail:  roymichael@rmrlegal.com

Dated:  January 22, 2026

## INTRODUCTION

Poole Funeral Home Real Estate, LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") propose this joint plan of liquidation (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the definitions section of the Plan.  Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of the Plan, the Sale, and certain related matters.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I. DEFINITIONS ANINTERPRETATION

### Section 1.1    Definitions.

The following terms, when used in this Plan, the Disclosure Statement (except as otherwise provided therein) or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of the Plan, shall have the respective meanings hereinafter set forth.

1.1.    "Administrative Claim" means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, that arose after May 12, 2025.

1.2.    "Administrative Claims Bar Date" means the date that is thirty (30) days after notice of entry of the Confirmation Order  is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

1.3.    "Administrative Claims Fund" means a fund to be established by the Debtor on the Effective Date, and administered thereafter by the Plan Administrator, in an amount sufficient to pay certain Allowed Administrative Claims.

1.4.    "Allowed" with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is  not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by a Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, to which an objection is not filed by the Claim Objection Deadline or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy

Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn with prejudice or determined by a Final Order (but only to the extent such Claim has been allowed); (d) determined to be valid by the Plan Administrator; or (e) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution or voting under the Plan.

1.5.    "<u>Assets</u>" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash (including the Sale Proceeds), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

1.6.    "<u>Asset Purchase Agreement</u>" means that certain Asset Purchase Agreement for the sale of substantially all of the Debtor's assets dated _____.

1.7.    "<u>Available Cash</u>" means, (i) any Cash Distributions held in the Disputed Claims Reserve for the benefit of a holder of a Disputed Claim, which is subsequently Disallowed, in whole or in part; (ii) any *de minimis* Distributions; (iii) any amount represented by an undeliverable Distribution; or (iv) any voided checks.

1.8.    "<u>Avoidance Actions</u>" means all trade creditor preference or avoidance claims or actions of the Debtor, including, but not limited to any actions or claims arising under section 544, 547, 548, 549, and 550 of the Bankruptcy Code and any other similar or corresponding claims or actions arising under state or any other law are hereby explicitly preserved.

1.9.    "<u>Bankruptcy Code</u>" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case concerning the Debtor.

1.10.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of Tennessee or such other court having jurisdiction over the Chapter 11 Case.

1.11.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the Chapter 11 Case.

1.12.    "<u>Bar Date</u>" means (i) September 9, 2025, the date fixed by the Bankruptcy Court as the last date by which all Persons and entities must have filed proofs of claim against the Debtor and (ii) November 10, 2025, the date fixed by the Bankruptcy Court as the last date by which all governmental entities

must have filed proofs of claim against the Debtor. These dates may have been extended by way of Debtors' motion to extend deadline to file its schedules.

1.13.  "Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in Tennessee are required or authorized by law to be closed.

1.14.  "Buyer" means those certain Buyers who shall be included in the forthcoming Asset Purchase Agreements.

1.15.  "Cash" means cash and cash equivalents in U.S. dollars.

1.16.  "Causes of Action" means any and all Claims, rights, actions, choses in action, suits, causes of action, Liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, including Avoidance Actions whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including, without limitation, receivables and those Claims and actions to avoid or recover pre-petition or post-petition transfers of money or property pursuant to applicable bankruptcy and non-bankruptcy law.

1.17.  "Chapter 11 Case" means the cases commenced by the Debtors on May 12, 2025, under chapter 11 of the Bankruptcy Code, administered under case number 1:25-bk-11197-NWW.

1.18.  "Claim" means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.19.  "Claim Objection Deadline" means: the latest to occur of: (i) 180 days after the Effective Date and (ii) such other date as may be requested by Plan Administrator to the Bankruptcy Court either before or after the expiration of the 180-day time period.

1.20.  "Class" means a category of Claims or Interests described in Article II hereof.

1.21.  "Confirmation" means the Bankruptcy Court's confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

1.22.  "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Chapter 11 Case.

1.23.  "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider Confirmation.

1.24.  "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

1.25.  "Convenience Class Claims" means an Allowed general unsecured Claim totaling less than $500.00 as of the Petition Date.

1.26.  "Creditor" means any Person who: (a) holds a Claim against the Debtor that arose prior to the Petition Date; (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b); or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

1.27.  "Disallowed" means, when referring to a Claim or Interest, a Claim (including a claim listed by the Debtor in its Schedules) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

1.28.  "Disclosure Statement" means the disclosure statement, and all exhibits, annexed thereto, filed in connection with the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code, and approved by an order of the Bankruptcy Court dated January 22, 2026 as containing adequate information as that term is defined in section 1125(a)(1) of the Bankruptcy Code.

1.29.  "Disputed Claim" means a Claim that is not an Allowed Claim nor a Disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which  Claim the Debtor or the Plan Administrator, as applicable, has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has  not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

1.30.  "Disputed Claims Reserve" means an appropriate reserve, to be established by the Debtor and administered by the Plan Administrator.

1.31.  "Distribution" means any distribution made pursuant to the terms of this Plan.

1.32.    "<u>Distribution Address</u>" means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed with respect to a particular Claim, "Distribution Address" means the address set forth in the Debtor's Schedules, as such address may have been  updated pursuant to Bankruptcy Rule 2002(g).

1.33.    "<u>Distribution Date</u>" means any date on which a Distribution is made to holders of Allowed Claims under this Plan, or as otherwise agreed. The first Distribution shall occur on or as soon as practicable after the Effective Date or as otherwise agreed by the Debtor and the Plan Administrator, as applicable. To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Plan Administrator shall determine.

1.34.    "<u>Effective Date</u>" means _____, 2026.

1.35.    "<u>Encumbrances</u>" means, collectively, any and all security interests, Liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

1.36.    "<u>Estate</u>" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

1.37.    "<u>Excluded Assets</u>" means the Assets of the Debtor excluded from the Sale, with the meaning ascribed to such term in the Asset Purchase Agreement.

1.38.    "<u>Exculpated Parties</u>" means each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor's Professionals, officers, and directors.

1.39.    "<u>Fee Claim Deadline</u>" means the deadline for all Professionals or other  Persons to file an application for final allowance of compensation and reimbursement of Professional Fee Claims for services rendered before the Effective Date, which deadline shall be the date which is forty-five (45) days after the Effective Date.

1.40.    "<u>Fee Application</u>" means the final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code by any parties seeking payment of Professional Fee Claims and/or reimbursement of expenses, as applicable, which shall be filed in accordance with Section 4.2(c)(ii) hereof.

1.41.   "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; *provided, however*, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.42.   "<u>General Unsecured Claim</u>" means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim or a Secured Claim.

1.43.   "<u>General Unsecured Creditor Assets</u>" means from and after the Effective Date, all Causes of Action, lawsuits, judgments, claims, refunds, rights of recovery, rights of set-off, counterclaims, defenses, demands, warranty claims, rights to indemnification, contribution, advancement of expenses or reimbursement, or similar rights (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, now existing or hereafter acquired, contingent or non-contingent (collectively, the "Retained Claims").

1.44.   "<u>General Unsecured Creditor Funding Reserve</u>" means all of the Sale Proceeds less outstanding expenses and payments to secured lenders.

1.45.   "<u>General Unsecured Creditor Interests</u>" means an interest in the Assets allocable to the respective holders of Allowed General Unsecured Claims (and any successors, transferees, or assigns thereof).

1.46.   "<u>Impaired</u>" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.47.   "<u>Interest</u>" means the rights and interests as of the Petition Date of any Person in the Debtor.

1.48.   "<u>Lien</u>" means any charge against, security interest in, Encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

1.49.   "<u>Person</u>" means any individual, corporation, partnership,

association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

1.50. "Petition Date" means May 12, 2025, the date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.51. "Plan" means this plan of liquidation and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.52. "Plan Administrator" means the individual retained to facilitate post-plan confirmation distributions and other related tasks.

1.53. "Plan Proponent" means the Debtor.

1.54. "Plan Supplement" means any other documents, agreements, schedules, and exhibits, specified in this Plan, to be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline, provided that the Debtor may amend such Plan Supplement at any time prior to the Confirmation Hearing.

1.55. "Post-Petition General Unsecured Claims Bar Date" means thirty (30) days following the entry of the Confirmation Order, which is the deadline to file a Claim, other than an Administrative Claim, that arose following May 12, 2025 and through the Effective Date.

1.56. "Priority Tax Claim" means a Claim or a portion of a Claim, which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.57. "Priority Unsecured Claim" means a Claim or a portion of a Claim, which is entitled to priority under section 507(a) of the Bankruptcy Code.

1.58. "Pro Rata" means, at any time, the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular Class at such time, including Disputed Claims at such time (a) as calculated by the Plan Administrator on or before any Distribution Date; or (b) as determined or estimated by the Bankruptcy Court.

1.59. "Professionals" means an entity (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code.

1.60.    "<u>Professional Fee Claims</u>" means any Claim of (a) a Professional, retained in the Chapter 11 Case, pursuant to sections 327, 363 or 1103 of the Bankruptcy Code, but prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code, or (b) a Person seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

1.60.    "<u>Released Party</u>" means each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor's Professionals

1.61.    "<u>Representative</u>" means any person who is authorized to act on behalf of another.

1.62.    "<u>Sale</u>" means the transaction between the Debtor and Buyer pursuant to which the Debtor sold substantially all of its Assets to the Buyer free and clear of all Liens, Claims, Interests and Encumbrances pursuant to section 363 of the Bankruptcy Code, as set forth in the forthcoming proposed Sale Order and Asset Purchase Agreement.

1.63.    "<u>Sale Order</u>" means the forthcoming proposed orders of the Bankruptcy Court regarding the Sale, dated _____.

1.64.    "<u>Sale Proceeds</u>" means the cash proceeds deriving from the Asset Purchase Agreements.

1.65.    "<u>Schedules</u>" means the Voluntary Petition and schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, and any amendments thereto.

1.66.    "<u>U.S. Trustee</u>" means the United States Trustee for Region 8.

1.67.    "<u>U.S. Trustee Fees</u>" means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code.

1.68.    "<u>Unclassified Claims</u>" means Administrative Claims, Priority Tax Claims, and Priority Unsecured Claims.

## Section 1.2    <u>Rules of Interpretation</u>.

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; provided that nothing in this clause (2) shall affect any party's consent rights over any other defined documents; (3) except as otherwise specified herein, any reference herein to an existing document, schedule, or exhibit, whether Filed, having been Filed, or to be Filed shall mean that document schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or the Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits to the Plan, if any; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any capitalized term used herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (15) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (16) references to "corporate action," "corporate structure," and other references to "corporate" and "corporation" will, except as the context may otherwise require, be deemed to include other forms of entities as well; (17) any effectuating provisions may be interpreted by the Debtors or the Plan Administrator, as applicable, in their sole discretion in a manner consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, without waiver of the rights of any Entity; (18) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (19) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (20) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

### Section 1.3    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

### Section 1.4    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Tennessee, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate, limited liability company, or partnership governance matters relating to the Debtors shall be governed by the laws of each company or corporation's said jurisdiction.

## ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and statutory fees have not been classified and thus are excluded from the Classes of Claims set forth in Article III hereof.

### 1.  Administrative Claims

Except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to relevant statutory law, or such Holder has been paid by any Debtor on account of such Allowed Administrative Claim prior to the Effective Date, or as otherwise set forth in an order of the Bankruptcy Court, each Holder of such an Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) or (2) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or the property of any of the foregoing, and such Administrative Claims shall be deemed compromised, settled, and discharged as of the Effective Date.

### 2.  Professional Fee Claims

As soon as reasonably practicable after the Confirmation Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Such funds shall not be considered property of the Estates of the Debtors.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) calendar days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.  Allowed Professional Fee Claims shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.

### 3.  Priority Tax Claims

Each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

### 4.  Statutory Fees

The Debtors shall pay all U.S. Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' business (or such amount agreed to with the U.S. Trustee or ordered by the Bankruptcy Court), for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*.

All Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.   All of the potential Classes for the Debtors are set forth herein.   The following represents a summary of the classification of Claims and Interests for each Debtor pursuant to the Plan:

1.    <u>Class Identification for Claims or Interests</u>.

The following chart represents the classification of certain Claims against, and Interests in, the Debtors pursuant to the Plan.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Secured Claims of Ralph / Chari Buckner | Impaired | Not Entitled to Vote (Disallowed for Purposes of Voting and Distribution) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4 | Convenience Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |

1.    <u>Class 1 — Other Secured Claims</u>.

(a)    *Classification*:  Class 1 consists of all Other Secured Claims.

(b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive:

(i)    payment in Cash;

(ii)    such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*:    Class 1 is Unimpaired under the Plan.    Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.    Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 — Secured Claims of Ralph / Chari Buckner</u>.

(a)    *Classification*:  Class 2 consists of Secured Claims of Ralph / Chari Buckner.

(b)    *Treatment*:  The holders of these claims shall not be treated in the Plan as a result of their failure to file a proof of claim.

  (c) *Voting*:  Class 2 is Impaired under the Plan.  These claims have been disallowed for purposes of voting and distribution.

3. <u>Class 3 — Other Priority Claims</u>.

  (a) *Classification*:  Class 3 consists of all Other Priority Claims.

  (b) *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

  (c) *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

4. <u>Class 4 — Convenience Claims</u>.

  (a) *Classification*:  Class 4 consists of all Convenience Claims.

  (b) *Treatment:*  Holders of Class 4 claims shall receive either a pro rata distribution of the allowed amount of their claim or such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Convenience Class Claims.

  (c) *Voting*:  Class 4 is Impaired under the Plan.  Holders of Convenience Claims are entitled to vote to accept or reject the Plan.

5. <u>Class 5 — General Unsecured Claims</u>

  (a) *Classification*:  Class 5 consists of all General Unsecured Claims.

  (b) *Treatment*:  Each Holder shall receive a pro rata distribution to the extent there is Cash left over after the liquidation of the Debtors' businesses.

  (c) *Voting*:  Class 5 is Impaired under the Plan.   Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

2.      **Deemed Acceptance by Non-Voting Classes.**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

3.      **Controversy Concerning Impairment.**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall determine such controversy at the Confirmation Hearing.

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to alter, amend, or modify the Plan, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules

# ARTICLE IV.

## PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN

**Section 4.1      <u>Treatment of Classified Claims and Interests</u>.**

The Secured Class of Claims against the Debtor shall receive senior secured treatment and payout by way of the Assets or Cash as generated by the Sale of the Debtors' Assets. The following treatment methods shall only be applicable to the extent there is a remaining amount of Assets after distribution to the senior Secured lenders in these cases.

The Unsecured Class of Claims against the Debtor shall be treated under the Plan as follows:

(a)      <u>**Class 5 - General Unsecured Claims**</u>.

Provided that the holder of a Class 5 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 5 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall receive (a) a Pro Rata share of the General Unsecured Creditor Interests and/or Cash in an amount not to exceed the amount of such Allowed General Unsecured Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed General

Unsecured Claim.

(b)      **Class 4 – Convenience Class Claims**.

Provided that the holder of a Class 4 Claim has not yet been paid, on the later of (i) the Effective Date and (ii)  for Claims in Class 4 that were Disputed Claims on the Effective Date  and have thereafter become Allowed Convenience Class Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Convenience Class Claim, or as soon thereafter as is practicable, holders of each such Allowed Convenience Class Claim shall receive (a) a pro rata payment of the Allowed amount of their  Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Convenience Class Claim.

**Section 4.2    Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor or the Plan Administrator 's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

## ARTICLE V.

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

**Section 5.1    Classes Entitled to Vote.**

Classes 4 and 5 are entitled to vote on the Plan.

**Section 5.2    Class Acceptance Requirement.**

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

**Section 5.3    Cramdown.**

If all applicable requirements for Confirmation are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), the Bankruptcy Court may confirm the Plan on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each  Class of Claims that is impaired thereunder, and has not accepted the Plan.

## ARTICLE VI. IMPLEMENTATION OF THE PLAN

**Section 6.1    Plan Funding Mechanism.**

The Plan shall be funded from the Sale Proceeds, Cash, and any other Assets of the Estate, except as expressly set forth herein.

**Section 6.2    Establishment of Reserves.**

At least fifteen (15) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court a notice that reflects the proposed amounts of the Administrative Claims Fund, the Disputed Claims Reserve and the General Unsecured Creditor Funding Reserve, if any.

**Section 6.3    Corporate Action.**

The Plan will be administered by the Plan Administrator in accordance with the provisions of the Plan. Upon the Distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; *provided, however*, that the Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

**Section 6.4    Closing of the Chapter 11 Case.**

After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets that have been or may be abandoned), and such Cash has been distributed  in accordance with the Plan, or at such earlier time as the Plan Administrator  deems appropriate, the Plan Administrator  shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Section 6.5    Winding Down of Affairs.**

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs. On and after the Effective Date, the Plan Administrator  may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

**Section 6.6    Formation of General Unsecured Creditor Funding Reserve.**

On the Effective Date or as soon as practicable thereafter, the General Unsecured Creditor Funding Reserve shall be established if any Assets are remaining. The General Unsecured Creditor Funding Reserve shall be used to pay the expenses related to liquidation and distribution of the General Unsecured Creditor Assets, including without limitation, costs and expenses of counsel or other advisors. To the extent additional funding is authorized for the liquidation and distribution

of General Unsecured Creditor Assets, 100% of such funding shall be paid only out of the General Unsecured Creditor Assets that would otherwise be distributed to the holders of General Unsecured Creditor Interests hereunder.

On the Effective Date, the remaining Assets shall vest automatically in the Plan Administrator free and clear of all Liens, claims, encumbrances, and other interests. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief. The transfer of the Assets to the Plan Administrator shall be made for the benefit and on behalf of holders of Claims receiving a distribution from proceeds of the Assets, if any. The Plan Administrator shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein. In connection with the transfer of the Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Plan Administrator will vest in the Plan Administrator and its representatives, and the Debtors and the Plan Administrator are authorized to take all necessary actions to effectuate the transfer of such privileges.

### Section 6.7    Powers and Duties of the Plan Administrator.

As of the Effective Date, the Plan Administrator shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee of the Debtor as the exclusive representative of the Estate or any corresponding provision of federal or state laws and shall succeed to all of the Debtor's and the Estate's rights. The powers, rights, and responsibilities of the Plan Administrator, all of which shall arise upon the occurrence of the Effective Date, shall include, but not be limited to:

> (a)    collecting and liquidating the Assets under the jurisdiction of the Bankruptcy Court;

> (b)    asserting, prosecuting, objecting to, pursuing, compromising and settling in accordance with the Plan Administrator's reasonable business judgment, all matters affecting the Estate, including, without limitation, Disputed Claims, and/or other Causes of Action related thereto, without further order of the Bankruptcy Court;

> (c)    asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code;

> (d)    acting on behalf of the Debtor in adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan;

> (e)    taking such actions the Plan Administrator deems

appropriate in his reasonable business judgment against any Person with respect to a Claim or Cause of Action and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws;

(f)     making Distributions to holders of all Allowed Claims, including Professional Fee Claims, in accordance with the Plan;

(g)     proceeding with and employing all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in order to investigate any Claims or Causes of Action;

(h)     employing, without further order of the Bankruptcy Court, professionals or other Persons to assist it in carrying out its duties hereunder, and compensating and reimbursing the expenses of those professionals and other Persons, on the terms to be agreed to by the Plan Administrator and such professionals and other Persons, without further order of the Bankruptcy Court including but not limited to the retention of counsel on a contingency or hourly fee basis, as the case may be, in regards to the Causes of Action;

(i)     investing Cash in accordance with section 345 of the Bankruptcy Code, withdrawing and making Distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtor or incurred by the Plan Administrator, from the Administrative Claims Fund, Available Cash, and General Unsecured Creditor Funding Reserve in accordance with the Plan;

(j)     coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained Assets and disposing of, and delivering title to others of, or otherwise realizing value of, all the remaining Assets, including without limitation, the Excluded Assets under the Sale;

(k)     overseeing compliance with the Debtor's accounting, finance, and reporting obligations and the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, if required;

(l)     preparing financial statements and U.S. Trustee post-confirmation quarterly reports, until such time such time as the Bankruptcy Court enters an order (i) dismissing the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) approving a final decree closing the Chapter 11 Case;

(m)     paying all other expenses for winding down the affairs of the Debtor in accordance with a wind down budget or as otherwise agreed to by the Plan Administrator , and  in the event of a dispute that cannot be resolved,

resolving such dispute in the Bankruptcy Court, subject to the terms of the Plan;

(n)    executing and delivering all documents, and taking all actions, necessary to consummate the Plan and wind down the Debtor's business;

(o)    implementing and/or enforcing all provisions of the Plan; and

(p)    exercising such other powers as may be vested in or assumed by the Plan Administrator, or as may be needed or appropriate to carry out the provisions of the Plan.

### Section 6.8    Appointment of the Plan Administrator.

The Debtor will employ a qualified individual who will be appointed as the Plan Administrator. The Plan Administrator shall be deemed the Estate's sole representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

### Section 6.9    Fees of the Plan Administrator and Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with the Plan Administrator's duties shall be paid on a monthly basis without any further notice to or action, Order, or approval of the Bankruptcy Court, in Cash if such amounts relate to any actions taken hereunder; *provided* that the Plan Administrator will only be reimbursed for its reasonable and documented out-of-pocket costs and expenses in accordance with a budget that is acceptable to the Plan Administrator. In the interests of full disclosure, it is anticipated that the Plan Administrator will consider and may employ Debtor's current counsel to pursue some post-petition preference actions in light of those counsels' prior work on such actions and general familiarity with the case. Any such employment, to the extent made, would be under a standard and customary contingency fee arrangement.

### Section 6.10    Issuance of General Unsecured Creditor Interests.

(a)    General Unsecured Creditor Interests. On the Effective Date or as soon as practicable thereafter, the Debtor shall deliver to the Plan Administrator a list of each Person to receive General Unsecured Creditor Interests as of the Effective Date pursuant to the Plan, including the Allowed amounts of the General Unsecured Claims of, and the address of, each such Person. On the Effective Date, the Debtor shall also deliver to the Plan Administrator a list of each holder of a General Unsecured Claim that is a Disputed Claim as of the Effective Date, including the maximum amount of

each such Claim, and the address of the holder thereof.

(b)    Transfer of General Unsecured Creditor Interests. The Plan Administrator shall maintain a register of the holders of General Unsecured Creditor Interests and shall adjust, without further order of the Bankruptcy Court, the register from time to time as General Unsecured Claims that are Disputed Claims become Allowed. Upon notice to the Plan Administrator by any holder of a General Unsecured Creditor Interest, the Plan Administrator shall amend the register to reflect any transfer of a General Unsecured Creditor Interest by such holder to a transferee as set forth in the notice.

**Section 6.11    Distributions to Holders of Claims and Interests.**

(a)    Estimation of Claims.

The Plan Administrator may, at any time before the case is closed, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(b)    No Recourse.

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

**THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

(c)     <u>Distribution on Account of Allowed Claims</u>.

Following the Effective Date and in accordance the Plan, Distributions shall be made as follows:

On the Effective Date, or as soon as practicable thereafter, the Debtor shall establish, to the extent there are remaining Assets after distribution to senior Secured lenders: (i) the General Unsecured Creditor Funding Reserve with the Sale Proceeds, if any are remaining; (ii) the Disputed Claims Reserve with Cash in an amount to be determined by the Plan Administrator; and (iii) the Administrative Claims Fund with Cash in an amount sufficient to pay certain Allowed Administrative Claims.

On the Effective Date, or as soon as practicable thereafter, the Administrative Claims Fund shall be distributed to holders of certain Allowed Administrative Claims by the Plan Administrator. The Plan Administrator shall distribute Cash in an amount not to exceed the amount of each such unpaid Allowed Administrative Claim and each Professional Fee Claim, until such Claims are satisfied in full. Upon satisfaction of the Allowed Administrative Claims and Professional Fee Claims, the Plan Administrator shall administer all remaining General Unsecured Creditor Assets for the benefit of Allowed General Unsecured Claims, except as expressly set forth in the Plan.

(i)     <u>Distribution on Account of Allowed Class 5 - General Unsecured Claims</u>. Provided that the holder of a Class 5 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 5 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, the holder of such Allowed General Unsecured Claim shall receive a Pro Rata Share of the General Unsecured Creditor Interests.

(i)     <u>Distribution on Account of Allowed Class 4 – Convenience Class Claims</u>. Provided that the holder

of a Class 4 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 4 that were Disputed Claims on the Effective Date and have thereafter become Allowed Convenience Class Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed Convenience Class Claims, or as soon thereafter as is practicable, the holder of such Allowed Convenience Class Claim shall receive a payment pro rata of the Allowed portion of its Claim.

(d)     <u>Distribution of General Unsecured Creditor Assets</u>. The Plan Administrator shall distribute to the holders of General Unsecured Creditor Interests, on monthly basis (or such other basis as determined by the Plan Administrator ), the proceeds of the General Unsecured Creditor Assets, if any.

(e)     <u>Disputed Claims Reserve</u>.

(i)     <u>Objection to Claims</u>. Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Plan Administrator shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to  occur of: (i) 180 days after the Effective Date, (ii) 180 after the expiration of the Post-Petition General Unsecured Claims Bar Date for Claims accruing and filed, other than Administrative Claims, and (iii) such other date as may be fixed  by the Bankruptcy Court either before or after the expiration of the 180 day time period. The Plan Administrator's rights to request and receive and extension of his or her deadline to objection to claims are herein reserved.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if made (a) in accordance with Federal Rule of Civil Procedure 4, as modified, and made applicable by Bankruptcy Rule 7004; (b) by first-class mail, postage prepaid, on the signatory of the proof of claim or other representative identified in the proof of claim or any

attachment thereto at the address of the Creditor set forth therein; or (c) by first- class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim or Cause of Action without further order of the Bankruptcy Court.

(i)    Resolution of Disputed Claims. No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(ii)    Establishment of Disputed Claims Reserve. On or before the Effective Date, the Debtor shall establish and fund the Disputed Claims Reserve with Cash in an amount to be determined by the Plan Administrator (or as otherwise required by order of the Bankruptcy Court). The Disputed Claims Reserve shall be administered by the Plan Administrator.

(iv)    Duties in Connection with Disputed Claims. The Plan Administrator shall object to, settle, or otherwise resolve Disputed Claims, and shall make Distributions to holders of Disputed Claims that subsequently become Allowed Administrative Claims or Allowed General Unsecured Claims, in accordance with the Plan from the Disputed Claims Reserve.

(v)    Distribution when a Disputed Claim is Resolved. On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive from the Disputed Claims Reserve any amounts attributable to such Claim, in accordance with the Plan. Any Cash held in the Disputed Claims Reserve for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, shall become Available Cash for distribution in accordance with the provisions of the Plan.

**Section 6.12    Miscellaneous Distribution Provisions.**

(a)    No Distribution in Excess of Allowed Amount of Claim. Notwithstanding anything to the contrary herein or in the Plan, no holder of an

Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

(b)    _De Minimis_ Distributions. The Plan Administrator shall not be required to make any Cash payment of less than twenty-five dollars ($25.00).

(c)    Allocation of Payments. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest, if any, that has accrued on such Claims but remains unpaid.

(d)    Timing of Distributions. Each Distribution shall be made on the relevant Distribution Date therefore and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on any date specified herein.

(e)    Manner of Payments Under the Plan. Unless the Person or Entity receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Plan Administrator, by check drawn on a domestic bank or by electronic transfer from a domestic bank.

(f)    Authority to Setoff. The Plan Administrator is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Estate may hold against the holder of such Allowed Claim; _provided_, that the Plan Administrator gives the holder of such Allowed Claim notice in writing (including email) at the address listed on the respective filed Proof of Claim or listed on the Debtors' Schedules, as the case may be, of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days of receiving such notice. If an objection is timely raised to a proposed setoff, the Plan Administrator may seek relief from the Bankruptcy Court to effectuate the setoff. However, to the extent mail or email is returned undeliverable to the Plan Administrator, such setoff must occur by motion practice before the Bankruptcy Court. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Estate or the Plan Administrator of any such Claims, rights, and Causes of Action the Estate may have against such holder.

(g)    Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, including any deeds, bills of sale, or assignments executed in

connection with the Sale or any other disposition of Assets contemplated by the Plan or the Sale Order, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

(h)    Preservation and Application of Insurance. The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

(i)    Address for Delivery of Distributions. Subject to Bankruptcy Rule 9010, any Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the registers maintained by the Plan Administrator as provided for in the Plan. If any Distribution is returned to the Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Plan Administrator is notified of such holder's then current address within sixty (60) days after such Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distribution shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan. The Plan  Administrator shall require any holder of General Unsecured Creditor Interests or other distributee to furnish to the Plan Administrator in writing an Employer Identification Number or Taxpayer Identification Number as assigned by the Internal Revenue Service and the Plan Administrator may condition any Distribution to any holder of General Unsecured Creditor Interests or other distributee upon receipt of such identification number. If the Employer Identification Number or Taxpayer Identification Number are not provided by the required deadline established by the Plan Administrator, the Claim of any holder of General  Unsecured Creditor Interests or distributee may be expunged and no Distribution will be issued by the Plan Administrator to such holder of General Unsecured Creditor Interests or distributee. The amounts owed to such holder of General Unsecured Creditor Interests shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.

(j)    Federal Income Tax Consequences to the Debtor. The Debtor does not anticipate that confirmation of the Plan will result in the Debtor being assessed or owing any Federal Income Tax. Confirmation will not trigger a taxable event. Moreover, the elimination of intercompany payables/receivables will not give rise to any cancellation of indebtedness income.

(k)    Time Bar to Cash Payments.

Checks issued by the Plan Administrator in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of

issuance thereof. Requests for reissuance of any check shall be in writing to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Plan Administrator on or before 90 days after the expiration of the 90-day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Estate and be treated as Available Cash. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate or the Plan Administrator.

(l)    Record Date for Distributions to Holders of Claims. As of the close of business on the Effective Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution of Available Cash. The Debtor or the Plan Administrator, as applicable, shall have no obligation to recognize any transfer of Claims occurring after the Effective Date.

(m)    Disputed Payments. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

(n)    Resignation of Directors and Officers. Upon the Effective Date of the Plan, the Debtor's board of directors and officers shall be deemed to have resigned.

(o)    No Agency Relationship. The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless arising from gross negligence, willful misconduct, or breach of fiduciary duty. The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of each of their, respective, duties under the Plan, except to the extent their actions constitute gross negligence, willful misconduct, or breach of fiduciary duty. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which they, respectively, believe to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may also rely upon information previously generated by the Debtor and such additional

information provided to each of them, respectively, by former affiliates of the Debtor. The liability of the Plan Administrator shall be capped at the amount of fees that the Plan Administrator receives in connection with the Chapter 11 Case.

## ARTICLE VII.

## EFFECT OF THE PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION

### Section 7.1    Binding Effect.

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

### Section 7.2    Term of Injunctions or Stays.

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

### Section 7.3    Preservation of Causes of Action.

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate shall be transferred to and vested in the Plan Administrator, for the benefit of holders of all Allowed Claims, as set forth in the Plan unless expressly released, waived, or relinquished under the Plan, the Confirmation Order or other order of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Plan Administrator will not pursue a Cause of Action against them.

The Plan Administrator shall retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action, including, but not limited to, any and all Causes of Actions, of potential but unknown value, against those entities listed on Schedule 8.3 of the Plan.

For the avoidance of doubt, all trade creditor preference or avoidance claims or actions of the Debtor, including, but not limited to any actions or claims arising under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code and any other similar or corresponding claims or actions arising under state or any other law (collectively, the "Avoidance Actions") are hereby explicitly preserved. Further, any additional Causes of Action, including but not limited to, claims against the directors, officers and operators of the Debtor are explicitly reserved.

No preclusion doctrine, including, without limitation, the doctrines of *res judicata*,

collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply to such Claims and Causes of Action by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan.

**Section 7.4    Injunctions.**

(a)      Satisfaction of Claims. The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

(b)      Scope of Injunction. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, a Released Party, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any Lien or Encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the Assets or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties or from pursuing third party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this Injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan or the Plan Administrator from pursuing and enforcing the Causes of Action.

(c)      Cause of Action Injunction. On and after the Effective Date, all Persons other than the Plan Administrator, will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan.

**Section 7.5    Exculpation.**

**Except as otherwise set forth in the Plan, neither the Debtor nor the Exculpated Parties shall have or incur any liability to any Person or entity for any action taken or omitted to be taken between the Petition Date and the Effective Date in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Order, the Asset Purchase Agreement or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, the Sale, the**

**Sale process, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case;** *provided, however***, that such action taken or not taken by such Person or Entity was specifically on behalf of the Debtor and in conjunction with the Chapter 11 Case,** *provided further***,** *however* **that the Exculpated Parties did not engage in fraud, gross negligence, willful misconduct, or acts performed outside the scope of section 1108 of the Bankruptcy Code not authorized by the Bankruptcy Court. For the avoidance of doubt, none of the Exculpated Parties are being exculpated in connection with any of the claims preserved under Section 7.3 of the Plan, except to the extent provided for herein.**

Section 7.6    <u>Compromise of Controversies</u>.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. Nothing herein is intended, nor shall be interpreted, to settle, resolve or release any claim of any non-debtor party against any other non-debtor party.

Section 7.7    <u>Releases by the Debtor</u>.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released, solely in their capacity in acting on behalf of the Debtor or its Estate, by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising before the Effective Date, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the subject matter of, any Claim or Interest that is treated in the Plan, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Sale process, the Sale Order, the Purchase Agreement or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, in connection with the Chapter 11 Case,** *provided, however***, that the Released Parties did not engage in fraud, willful misconduct, or gross negligence, taking place on or before the Effective Date.**

**Section 7.8**    **Post-Confirmation Activity.**

As of the Effective Date, the Plan Administrator may conclude the winding down of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan, and the Confirmation Order, as applicable. Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services, in connection with their respective duties, after the Effective Date without application to and approval of the Bankruptcy Court.

# ARTICLE VIII.

# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 8.1**    **Executory Contracts and Unexpired Leases.**

To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date that have not previously been assumed or rejected, or have not been assumed and assigned to Buyer, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

**Section 8.2**    **Rejection Damages Bar Date.**

If rejection by the Debtor, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, or the Plan Administrator unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Plan Administrator not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

**Section 8.3**    **Post-Petition General Unsecured Bar Date.**

Any Claim, other than an Administrative Claim, that arose after May 12, 2025, shall be forever barred and shall not be enforceable against the Debtors, their Estate, or the Plan Administrator unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Plan Administrator not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

**Section 8.4**    **Effect of Post-Confirmation Rejection.**

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

# ARTICLE IX.

## CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE

**Section 9.1    Conditions to Confirmation.**

The Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Plan Proponent.

**Section 9.2    Conditions to Occurrence of Effective Date.**

The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions may be waived in whole or in part at any time by the Plan Proponent:

        (a)    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order.

        (b)    The Confirmation Order shall provide for the releases, injunctions and exculpation of the Persons provided for in the Plan.

**Section 9.3    Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date.**

If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after fourteen (14) days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; *provided, however*, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

# ARTICLE X.

## CONFIRMABILITY AND SEVERABILITY OF A PLAN

**Section 10.1    Confirmability and Severability of Plan.**

Subject to the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan. If the Debtor revokes or withdraws the Plan, then nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any Persons in any further proceedings involving the Debtor. A determination by the Bankruptcy Court that the Plan is not confirmable

pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to amend the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions therein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

## ARTICLE XI. ADMINISTRATIVE PROVISIONS

### Section 11.1 <u>Retention of Jurisdiction.</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

6. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of, or determine any matters that may otherwise arise in connection with or relate to the Plan, the Confirmation Order, and all contracts, instruments, releases, indentures, and other agreements or documents entered into or delivered in connection therewith or otherwise approved by a Final Order of the Bankruptcy Court;

7. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

9. resolve any cases, controversies, suits, disputes, Causes of Action, or other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, or the Confirmation Order;

10. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, or exculpations, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

11. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12. consider any modifications to the Plan, including to cure or remedy any defect or omission or to reconcile or clarify any inconsistency in the Plan, the Disclosure Statement, the Confirmation Order, any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or any other Bankruptcy Court order;

13. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14. hear and determine matters related to any requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

15. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

16. enforce all orders previously entered by the Bankruptcy Court;

17. enter an order or decree contemplated under Bankruptcy Rule 3022 concluding or closing the Chapter 11 Cases; and

18. hear any other matter not inconsistent with the Bankruptcy Code.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered in connection with the Plan, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

### Section 11.2    Continuing Effect of Sale Orders.

Notwithstanding anything in the Plan to the contrary, the Sale Orders and any and all related documents shall not be modified, limited, or amended by the Plan.

### Section 11.3    Effectuating Documents, Further Transactions.

The Debtor or the Plan Administrator, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### Section 11.4    Waiver of Bankruptcy Rules 3020(e) and 7062.

The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order, and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

### Section 11.5    No Discharge.

The Debtor will not receive a discharge under the Plan in accordance with section 1141 of the Bankruptcy Code.

### Section 11.6    Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of provisions of the Plan.

### Section 11.7    Payment of U.S Trustee Fees and Other Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan until such time as the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter 11 Case.

**Section 11.8   Governmental Carve-Out.**

Nothing in the Plan or the Confirmation Order shall (i) effect a release of any Claim of, (ii) enjoin from bringing any Claim, suit, action or other proceedings by, or (iii) exculpate any party from any liability to, the United States Government or any of its agencies or any state or local government within the United States, arising under (v) the federal securities laws, (w) the Employment Retirement Income Security Act of 1974, as amended, (x) the Internal Revenue Code, (y) the environmental laws or (z) any criminal laws of the United States.

**Section 11.9   Disposal of Books and Records.**

The Debtor's or Plan Administrator's rights, as applicable, to seek authorization from the Bankruptcy Court for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained are preserved.

**Section 11.10   Amendments.**

(a)    Pre-Confirmation Amendment. The Debtor may amend the Plan at any time prior to the entry of the Confirmation Order, provided the amended Plan and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

(b)    Post-Confirmation Amendment Not Requiring Resolicitation. After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided: (i) the Debtor obtains Bankruptcy Court approval of such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment of any Class under the Plan.

(c)    Post-Confirmation Amendment Requiring Resolicitation. After the Confirmation Date and before the Effective Date of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtor complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

**Section 11.11    Successors and Assigns.**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**Section 11.12    Confirmation Order and Plan Control.**

To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan.

**Section 11.13    Further Action.**

Nothing contained in the Plan will prevent the Debtor or the Plan Administrator, as applicable, from taking such actions as may be necessary to consummate the Plan even though such actions may not be specifically provided for within the Plan.

**Section 11.14    Exhibits.**

All Exhibits to the Plan are incorporated by reference and are intended to be an integral part of this document as though fully set forth in the Plan.

**Section 11.15    Notices.**

Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

| If to the Debtors: | If to Counsel to the Debtors: |
|---|---|
| Poole Funeral Home Real Estate, LLC<br>c/o Brian Poole<br>3000 Ralph Buckner Blvd.<br>Cleveland, TN 37311 | Roy Michael Roman<br>**RMR Legal PLLC**<br>70 N. Ocoee Street<br>Cleveland, TN 37311<br>Telephone:  (423) 528-8484<br>Fascimile:  (423) 717-5564<br>E-mail:  roymichael@rmrlegal.com |
| **If to the U.S. Trustee:** | |
| David Holesinger<br>Office of the United States Trustee<br>Historic U. S. Courthouse<br>31 East 11th Street, 4th Floor Chattanooga, TN 37402<br>423-752-5153<br>david.holesinger@usdoj.gov | |

### Section 11.16   **Substantial Consummation.**

Following the initial distribution, on the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### Section 11.17   **Deemed Acts.**

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

[*Remainder of page intentionally left blank*]

DATED:    Cleveland, Tennessee
          January 22, 2026

                              Respectfully submitted,

                              /s/      Roy Michael Roman
                              Roy Michael Roman (TN BPR #042658)
                              **RMR Legal PLLC**
                              70 N. Ocoee Street
                              Cleveland, TN 37311
                              Telephone:    (423) 528-8484
                              Facsimile:    (423) 717-5564
                              E-mail:        roymichael@rmrlegal.com

                              *Counsel to the Debtors and Debtors in Possession*


                              /s/ Brian K. Poole
                              Brian K. Poole
                              CEO