THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 1:25-bk-11197-NWW** |
| **POOLE FUNERAL HOME** | ) | |
| **REAL ESTATE, LLC,** *et al.*, | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | **Jointly Administered** |
| | ) | |

---

## DEBTORS' DISCLOSURE STATEMENT
## REGARDING JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

Roy Michael Roman
**RMR Legal PLLC**
70 N. Ocoee Street
Cleveland, TN 37311
Telephone:  (423) 528-8484
Fascimile:  (423) 717-5564
E-mail:  roymichael@rmrlegal.com

Dated:  January 22, 2026

## <u>IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT</u>

The Debtors are providing the information in this Disclosure Statement to Holders of Claims in the Voting Classes for purposes of soliciting votes to accept or reject the *Joint Chapter 11 Plan of Liquidation*. Nothing in this Disclosure Statement may be relied upon or used by any Entity for any other purpose. Before deciding whether to vote for or against the Plan (as defined herein), each Holder entitled to vote should carefully consider all of the information in this Disclosure Statement, including the risk factors described in Article VIII herein.

The Debtors urge Holders of Claims whose votes are being solicited to accept the Plan.

<u>The Debtors urge each Holder of a Claim to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the Plan, and the transactions contemplated thereby.</u> Further, the Bankruptcy Court's approval of the adequacy of the information contained in this Disclosure Statement does not constitute the Bankruptcy Court's approval of the Plan.

This Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, and certain anticipated events in the Debtors' Chapter 11 Cases. Although the Debtors believe that these summaries are fair and accurate, these summaries are qualified in their entirety to the extent that they do not set forth the entire text of such documents or statutory provisions or every detail of such anticipated events. The Plan and other documents incorporated herein will govern for all purposes in the event of any inconsistency or discrepancy between a description in this Disclosure Statement and the terms and provisions of the Plan or any other documents incorporated herein by reference. Factual information contained in this Disclosure Statement has been provided by the Debtors' management team and is as of the date of this Disclosure Statement except where otherwise specifically noted. The Debtors do not represent or warrant that the information contained herein or attached hereto is without any material inaccuracy or omission.

In preparing this Disclosure Statement, the Debtors relied on financial data derived from their books and records and various assumptions regarding the Debtors' business. While the Debtors believe that such financial information fairly reflects the financial condition of the Debtors as of the date hereof and that the assumptions regarding future events reflect reasonable business judgments, no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtors' business or their future results or operations. The Debtors expressly caution readers not to place undue reliance on any forward-looking statements contained herein.

The Debtors are making the statements and providing the financial information contained in this Disclosure Statement as of the date hereof unless otherwise specifically noted, and there is no assurance that the statements contained herein will be correct at any time after such date. Although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so, and expressly disclaim any duty to publicly update any part of this Disclosure Statement, including the exhibits and any forward-looking statements whether as a result of new information, future events, or otherwise. Holders of Claims and Interests reviewing this Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since this Disclosure Statement was Filed. Information contained herein is subject to completion, modification, or amendment. The Debtors reserve the right to File an amended or modified Plan and related Disclosure Statement from time to time, subject to the terms of the Plan.

The Debtors have not authorized any Entity to give any information about or concerning the Plan other than that which is contained in this Disclosure Statement. The Debtors have not authorized any representations concerning the Debtors or the value of their property other than as set forth in this Disclosure Statement.

This Disclosure Statement does not constitute and may not be construed as an admission of fact, liability, stipulation, or waiver. The Debtors or any other authorized party may seek to investigate, File, and prosecute Claims and may object to Claims after the Confirmation or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies any such Claims or objections to Claims.

If the Bankruptcy Court confirms the Plan and the Effective Date occurs, all Holders of Claims and Interests (including those Holders of Claims and Interests who do not submit ballots to accept or reject the Plan, who vote to reject the Plan, or who are not entitled to vote on the Plan) will be bound by the terms of the Plan. The Confirmation and effectiveness of the Plan are subject to certain material conditions precedent described herein and set forth in Article IX of the Plan. There is no assurance that the Plan will be confirmed or, if confirmed, that the conditions required to be satisfied for the Plan to go effective will be satisfied or waived. You are encouraged to read the Plan and this Disclosure Statement in its entirety, including Article VIII entitled "Risk Factors," before submitting your ballot to vote on the Plan.

The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee by the Bankruptcy Court of the accuracy or completeness of the information contained herein or an endorsement by the Bankruptcy Court of the merits of the Plan. The information contained in this Disclosure Statement is included for purposes of soliciting votes for and Confirmation of the Plan and may not be relied on for any other purpose.

The Debtors have sought to ensure the accuracy of the financial information provided in this Disclosure Statement; however, the financial information contained in this Disclosure Statement or incorporated herein by reference has not been and will not be audited or reviewed by the Debtors' independent auditors unless explicitly provided otherwise.

**IMPORTANT INFORMATION REGARDING THIS DISCLOSURE STATEMENT SOLICITATION OF VOTES TO ACCEPT OR REJECT THE
JOINT CHAPTER 11 PLAN OF LIQUIDATION OF POOLE FUNERAL HOME REAL ESTATE, LLC AND ITS DEBTOR AFFILIATES**
DATED:  January 22, 2026

**YOU ARE RECEIVING THIS DOCUMENT AND THE ACCOMPANYING MATERIALS BECAUSE AS OF THE VOTING RECORD DATE, YOU HELD A CLAIM AGAINST THE DEBTORS IN ONE OF THE FOLLOWING CLASSES AND ARE THEREFORE ENTITLED TO VOTE ON THE PLAN:**

| VOTING CLASSES | NAME OF CLASS UNDER THE PLAN |
|---|---|
| 4 | Convenience Claims |
| 5 | General Unsecured Claims |

# I.    EXPLANATION OF CHAPTER 11

## A.    Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code, pursuant to which a debtor may reorganize its business for the benefit of its creditors, stockholders, and other parties in interest or engage in an orderly liquidation of its business. The Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 12, 2025.    The Chapter 11 Cases are being jointly administered under Case No. 1:25-bk-11197-NWW by order of the Bankruptcy Court.

The commencement of a chapter 11 case creates an estate of all the legal and equitable interests of the debtor in possession as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and continue in possession of its property as a "debtor-in-possession'' unless the bankruptcy court orders the appointment of a trustee. In the Chapter 11 Case, the Debtor has remained in possession of its property and is winding down its business as a debtor in possession.

Under section 362 of the Bankruptcy Code, the filing of a chapter 11 petition, among other things, automatically stays all attempts by creditors or other third parties to collect prepetition claims from the debtor or otherwise interfere with its property or business. Exempted from the automatic stay are governmental authorities seeking to exercise regulatory or policing powers. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

## B.    The Plan of Liquidation

The formulation of a chapter 11 plan is the principal purpose of a chapter 11 case. A chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and interest holders with respect to their claims against, and interests in, the debtor. According to section 1125 of the Bankruptcy Code, acceptances of a chapter 11 plan may be solicited by the debtor only after a written disclosure statement has been provided to each creditor or shareholder who is entitled to vote on the plan.

The Debtor's Plan is a plan of liquidation.  In general, a chapter 11 plan of liquidation (i) divides claims and interests into separate classes, (ii) specifies the property that each class is to receive under the plan, and (iii) contains other provisions necessary to implement the plan. Under the Bankruptcy Code, "claims" and "interests" are classified rather than "creditors," because such Persons or entities may hold claims and interests in more than one class.

# II.    OVERVIEW OF THE PLAN

## A.    Purpose of the Plan

The primary purpose of the Plan is to effectuate the completion of the orderly wind down of the Debtor's affairs. Pursuant to the Plan, the Debtor contemplates the Distribution of (i) the proceeds from the Sale, (ii) Cash, and (iii) other Assets of the Estate for the benefit of

holders of Eligible Claims pursuant to the Plan and the Bankruptcy Code's priority distribution requirements.

The Disclosure Statement sets forth certain detailed information regarding the Debtor's history and significant events that occurred prior to, and during, the Chapter 11 Case. The Disclosure Statement describes the Plan, effects of Confirmation and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the Confirmation process and voting procedures that holders of Eligible Claims must follow for votes to be counted.

**B.**     **Summary of Proposed Distributions Under the Plan**

Under the Plan, Claims against, and Interests in, the Debtor are divided into three (3) Classes. Certain Claims, including Administrative Claims and Priority Tax Claims, are not classified and, if not paid prior, will receive payment in full in Cash on the later of the Effective Date or the first Business Day after the date that is thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as  otherwise agreed to by the holder of such Claim. All other Claims and Interests, to the extent Allowed, will receive the Distributions described in the table below.

The table below summarizes the classification and treatment of the pre-petition Claims and Interests under the Plan. The summary is qualified in its entirety by reference to the provisions of the Plan and the estimates contained therein may be subject to change.

| DESCRIPTION | TREATMENT | ENTITLED TO VOTE | ESTIMATED ALLOWED AMOUNTS ($) | ESTIMATED RECOVERY |
|---|---|---|---|---|
| Class 1 – Other Secured Claims | Unimpaired; payment of Claimant's share. | No | $[Forthcoming] | $[Forthcoming] |
| Class 2 – Secured Claims of Ralph / Chari Buckner | Impaired; not entitled to vote—disallowed for purposes of voting and distribution. | No | N/A | N/A |
| Class 3 – Other Priority Claims | Unimpaired | No | $[Forthcoming] | $[Forthcoming] |

| | | | | |
|---|---|---|---|---|
| Class 4 - Convenience Class Claims | (a) a pro rata payment of the Allowed amount of their Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Convenience Class Claim, if any. | Yes | $[Forthcoming] | $[Forthcoming] |
| Class 5 – General Unsecured Claims | Impaired, payment of such Claimant's Pro Rata share of General Unsecured Creditor Interests, if any. | Yes | $[Forthcoming] | $[Forthcoming] |

### III.    BACKGROUND

**A.    Debtor's Business**

**1.    Debtor's Operations**

The Poole funeral home brand ("Poole") is one of the larger and more sophisticated funeral home brands in the Southeast.  Poole provides funeral services to clients across the states of Tennessee and Georgia.  The Poole brand was founded by Brian Poole, a successful entrepreneur who created a household-name brand in the State of Georgia prior to moving to Tennessee.  While the brand thrived in Georgia, Poole fell prey to fraud and deceptive acts after a sale process for various locations in Southeast Tennessee.  As such, a chapter 11 filing was necessitated.

**2.    Directors and Officers**

Poole's sole director is Mr. Brian K. Poole.

**B.    The Debtor's Prepetition Capital Structure**

**1.    Prepetition Indebtedness**

Prior to the commencement of these Chapter 11 cases, the Debtor was indebted, liable, and obligated to Homesteaders Life Insurance Co. any whole or partial successor or assign thereof.  This was the primary secured lender of the Debtors prior to the filing.  The aforementioned debt was secured by first priority, properly perfected liens and security interests, effective and valid in all respects, in all of the Debtors' real and personal property assets granted and pledged.  In total, as of the Petition Date, the Debtor had approximately $17,917,991.80 in secured liabilities.

The Debtors also faced a secured note from Ralph / Chari Buckner, but this secured note is disallowed for purposes of voting and distribution as a result of Ralph / Chari Buckner failing to file a Proof of Claim in these chapter 11 cases.

In addition, as of the Petition Date, the Debtor had approximately $153,266.20 in unsecured current liabilities.

**C.    Pending Prepetition Litigation**

As of the Petition Date, there was one (1) pending action by or against the Debtor (the "Civil Actions").  The Civil Action is:

- *Ralph Buckner, Jr., Chari Buckner v. Brian Keith Poole, Amy Elizabeth Poole, Laurenbrook Management, Inc., Poole Funeral Home Holdings Tennessee, Inc., and Poole Funeral Home Real Estate, LLC*, Case No. 2024-cv-173, Bradley County Chancery Court:  This litigation was filed, and the Debtors' CEO as well as certain of the Debtors filed a countersuit, as a result of the disputed transaction between the Poole entities and Ralph / Chari Buckner.  The Debtors alleged that they were fraudulently

induced into purchasing the Tennessee properties, and as such, the case was ongoing until the Chapter 11 cases were filed.

### D.   Events Leading Up to the Filing

The Debtors were operating positively and profitably in Georgia prior to the Debtors endeavoring and venturing to open Tennessee locations.  As a result of the fraudulently induced purchase of various Tennessee funeral homes, the Debtors were forced to rely on the profitable Georgia businesses to service the debt obligations imposed by the purchase of the Tennessee properties.  Over time, this added significant stress to the Debtors' bottom line and capital structure.

## IV.   THE CHAPTER 11 CASE

### A.   Commencement of the Chapter 11 Case

On May 12, 2025, the Debtor filed a voluntary petition in the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code.

### 1.   First Day Relief

On or about the Petition Date, the Debtor sought certain relief from the Bankruptcy Court to ensure uninterrupted continuation of the Debtor's business pending an expeditious sale and orderly wind down of its affairs.  The initial hearing for such relief was held on May 14, 2025.

The Bankruptcy Court entered a number of orders granting the Debtor various forms of relief, including:

- an order extending the Debtor's time to file its statement of financial affairs [Docket No. 31] (Final Order)];

- an order granting the Debtor authority to pay employees pre-petition wages, related expenses, benefits and taxes [Docket No. 32] (Final Order)];

- an order granting the Debtor maintenance and use of certain existing bank accounts, cash management system and business forms [Docket No. 37] (Final Order)];

- an order authorizing debtors to use cash collateral, granting adequate protection [Docket Nos. 48, 89] (Interim Orders); Docket No. 108] (Final Order)];

- an order granting joint administration of the bankruptcy cases [Docket Nos. 59, 60, 61, 62] (Final Orders)];

- an order granting the Debtor authority to pay prepetition utility claims, enjoin utilities from altering, refusing or discontinuing service, to determine adequacy of assurance of payment for future service from

utilities, and establishing procedures for determining requests for additional assurance [Docket No. 81] (Final Order)];

**2.**     **Retention of the Debtor's Professionals**

- On June 5, 2025, the Bankruptcy Court entered an order authorizing the Debtor to employ and retain RMR Legal PLLC as general bankruptcy counsel for the Debtor in the Chapter 11 Case [Docket No. 65].

- On September 2, 2025, the Bankruptcy Court entered an order authorizing the Debtor to employ and retain the Don Ledford Group as Real Estate Agent for the Debtor [Docket No. 93].

- On October 17, 2025, the Bankruptcy Court entered an order authorizing the Debtor to employ and retain The Foresight Companies as Marketing Advisor for the Debtor [Docket No. 112].

**3.**     **Filing of Schedules**

On June 6, 2025, the Debtor filed its schedules of assets and liabilities (collectively the "Schedules") [Docket No. 67-71]. On June 6, 2025, the Debtor filed its Statement of Financial Affairs [Docket No. 74].

**B.**     **Sale of the Debtor's Assets**

The Debtors' are currently finalizing the sale of substantially all of their assets to interests parties, namely SCI and Rush (as defined in the respective APAs). The Debtors have engaged the Foresight Group to facilitate a large-scale, value-maximizing going concern sales transaction which will generate significant capital to resolve outstanding liabilities in these cases. Of importance is Foresight's facilitation, alongside the Debtors, of a going-concern sale to both a large-scale company and a local entity. This dual-faceted sale process is a testament to the significant work undergone by the Debtor professionals.

The Debtors have previously sold real estate located at 2415 N. Ocoee Street and 3010 N. Ocoee Street in an attempt to generate cash for payment towards creditors. *See* Docket No. 134.

**C.**     **Bar Date for Filing Prepetition Claims**

On May 13, 2025, the Court issued and served its Notice of Chapter 11 Bankruptcy Case (the "Bar Date Notice") [Docket No. 11]. Among other things, the Bar Date Notice established September 9, 2025, "Bar Date"), as the last date and time for all Persons and entities to file proofs of claim based on prepetition Claims against the Debtor, and November 10, 2025 (the "Governmental Bar Date," and together with the Bar Date, the "Bar Dates") as the last date and time for all governmental entities, to file proofs of claim based on prepetition Claims against the Debtor.

In accordance with Bankruptcy Rule 3003(c)(2), holders of Claims who fail to comply with the terms of the Bar Date Order and whose Claims are either not listed in the Schedules or are listed as disputed, contingent or unliquidated are forever barred from (a) filing a proof of claim with respect to such Claim; (b) asserting such Claim against the Debtor or its Estate

and/or property; (c) voting on any plan filed in this Chapter 11 Case; and (d) participating in any Distribution in the Chapter 11 Case on account of such Claim.

### D.     Executory Contract and Unexpired Lease Charges

Section 365 of the Bankruptcy Code grants the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is assumed, the rights of the Debtor to such agreement continue as property of its Estate.

A subsequent breach of an assumed lease or executory contract creates an administrative claim in favor of the non-debtor party, entitling it to an administrative claim for prepetition obligations as well as postpetition obligations arising as a result of the breach. If an executory contract or unexpired lease is rejected, the non-debtor counterparty to the agreement may file a claim for damages incurred by reason of the rejection, which is treated as a prepetition claim. In the case of rejection of leases of real property, such damage claims are subject to certain claim amount limitations imposed by the Bankruptcy Code.

Generally, debtors have until the confirmation of a plan to assume executory contracts and personal property leases and the earlier of one hundred twenty (120) days from the petition date or plan confirmation to assume unexpired leases of nonresidential real property to which they are a party.

## V.     THE CHAPTER 11 PLAN

### A.     General Description of the Treatment of Claims and Interests

Claims and Interests are divided into five (5) Classes under the Plan, and the proposed treatment of Claims varies among Classes. Administrative Claims are not classified. The Plan contains three (3) Classes of Impaired Claims, which consist of Secured Claims of Ralph / Chari Buckner, Convenience Claims, and General Unsecured Claims (Classes 2, 4, and 5). The meaning of "Impairment" and the consequences of having an Impaired Claim in connection with voting on the Plan is articulated in the Plan. Each of the Classes established under the Plan is grounded in factual and legal differences between the Claims and Interests, which comprise the Class.

The following section briefly summarizes the classification and treatment of Claims under the Plan.

#### 1.     Unclassified Claims

##### a.     General

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan, and the holders of such unclassified Claims are thus not entitled to vote to accept or reject the Plan. Accordingly, pursuant to the Plan, Administrative Claims and Priority Tax Claims shall be treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.

### b.  Administrative Claims

An Administrative Claim is defined in the Plan and means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, that arose after May 12, 2025, including, without limitation, (a) the actual and necessary postpetition costs and expenses incurred by the Debtor in preserving the Estate or operating its business, (b) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code, (c) U.S. Trustee Fees, and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

Subject to the Bar Date and other provisions in the Plan and except to the extent the Debtor or the Plan Administrator, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Plan Administrator shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Allowed Administrative Claims shall be paid from the funds in the Administrative Claims Fund.

### c.  Administrative Bar Date

#### (1)  General Provisions

Except as provided below for Professionals requesting compensation or reimbursement for Professional Fee Claims or the U.S. Trustee Fees, requests for payment of Administrative Claims arising after May 12, 2025 must be filed no later than thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Debtor or their respective property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

#### (2)  Professionals

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Fee Claim Deadline. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed. All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Plan Administrator to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are Allowed. Each Professional or other Person that intends to

seek payment on account of a Professional Fee Claim shall provide the Debtor with a statement, by no later than three (3) days after entry of the Confirmation Order, of the amount of estimated unpaid fees and expenses accrued by such Professional up to the date of such statement, the amount of fees and expenses that each such Professional expects to incur from such date through the Effective Date, and the amount of fees and expenses that each such Professional expects to incur from such date in connection with the preparation and prosecution of each such Professional's Fee Application. For the avoidance of doubt, the estimate included in such statement shall not be a cap and any amount that exceeds the estimate shall still be treated as a Professional Fee Claim payable to such Professional.

### (3) U.S. Trustee Fees

The Debtor or the Plan Administrator, as applicable, shall pay all applicable U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter 11 Case.

### d. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim and Allowed Priority Unsecured Claim shall receive, in full satisfaction and release of such Priority Tax Claim or Priority Unsecured Claim (i) payment in full in Cash; or (ii) such other treatment as may be agreed upon by such holder and the Debtor or Plan Administrator as soon as reasonably possible following the Effective Date.

As of the filing of this Disclosure Statement, an aggregate amount of approximately $278,494.20 in Priority Claims has been asserted against the Debtor.

### 2. Classified Claims

### a. Class 1 – Other Secured Claims

Other Secured Claims consist of any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a General Unsecured Claim, or a Convenience Class Claim. Holders of Other Secured Claims are Unimpaired. As such, each holder of an Other Secured Claim is presumed to accept the Plan as they will receive all initial distributions from the Sale.

### b. Class 5 - General Unsecured Claims

General Unsecured Claims consist of any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, or a Convenience Class Claim. Holders of Claims in Class 5 are Impaired. Each holder of General Unsecured Claim is not conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Provided that the holder of a Class 5 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 5 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General

Unsecured Claim shall receive (a) a Pro Rata share of the General Unsecured Creditor Interests and/or Cash in an amount not to exceed the amount of such Allowed General Unsecured Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed General Unsecured Claim.

### c. Class 4 - Convenience Class Claims

Convenience Class Claims consist of any Claim that would otherwise be classified as a General Unsecured Claim but which total amount is $500.00 or less in United States Currency. Holders of Claims in Class 4 are Impaired. Each holder of General Unsecured Claim is not conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Provided that the holder of a Class 4 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 4 that were Disputed Claims on the Effective Date and have thereafter become Allowed Convenience Class Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Convenience Class Claim, or as soon thereafter as is practicable, holders of each such Allowed Convenience Class Claim shall receive (a) a pro rata payment of the Allowed amount of their Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Convenience Class Claim.

### B. Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor or the Plan Administrator's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

## VI. IMPLEMENTATION OF THE PLAN

### A. Plan Funding Mechanism

The Plan shall be funded from the Sale Proceeds, Cash, and any other Assets of the Estate, except as expressly set forth in the Plan.

### B. Establishment of Reserves

At least ten (10) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court a notice that reflects the proposed amounts of the Administrative Claims Fund, the Disputed Claims Reserve and the General Unsecured Creditor Funding Reserve.

### C. Corporate Action

The Plan will be administered by the Plan Administrator in accordance with the provisions of the Plan. Upon the Distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however,

that the Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

### D.   Closing of the Chapter 11 Case

After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets that have been or may be abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Plan Administrator deems appropriate, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### E.   Winding Down of Affairs

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs. On and after the Effective Date, the Plan Administrator may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

### F.   The Powers and Duties of the Plan Administrator

As of the Effective Date, the Plan Administrator shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee of the Debtor as the exclusive representative of the Estate or any corresponding provision of federal or state laws and shall succeed to all of the Debtor's and the Estate's rights. The powers, rights, and responsibilities of the Plan Administrator, all of which shall arise upon the occurrence of the Effective Date, shall include, but not be limited to:

1.   collecting and liquidating the Assets under the jurisdiction of the Bankruptcy Court;

2.   asserting, prosecuting, objecting to, pursuing, compromising and settling in accordance with the Plan Administrator's reasonable business judgment, all matters affecting the Estate, including, without limitation, Disputed Claims, and/or other Causes of Action related thereto, without further order of the Bankruptcy Court;

3.   asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code;

4.   acting on behalf of the Debtor in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan;

5.      taking such actions as the Plan Administrator deems appropriate in his or her reasonable business judgment against any Person with respect to a Claim or Cause of Action and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws;

6.      making Distributions to holders of all Allowed Claims, including Professional Fee Claims, in accordance with the Plan;

7.      proceeding with and employing all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in order to investigate any Claims or Causes of Action;

8.      employing, without further order of the Bankruptcy Court, professionals or other Persons to assist it in carrying out its duties hereunder, and compensating and reimbursing the expenses of those professionals and other Persons, on the terms to be agreed to by the Plan Administrator and such professionals and other Persons, without further order of the Bankruptcy Court including but not limited to the retention of counsel on a contingency or hourly fee basis, as the case may be, in regards to the Causes of Action;

9.      investing Cash in accordance with section 345 of the Bankruptcy Code, withdrawing and making Distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtor or incurred by the Plan Administrator, from the Administrative Claims Fund, Available Cash, and General Unsecured Creditor Funding Reserve in accordance with the Plan;

10.      coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained Assets and disposing of, and delivering title to others of, or otherwise realizing value of, all the remaining Assets, including without limitation, the Excluded Assets under the Sale;

11.      overseeing compliance with the Debtor's accounting, finance, and reporting obligations and the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, if required;

12.      preparing financial statements and U.S. Trustee post-confirmation quarterly reports, until such time such time as the Bankruptcy Court enters an order (i) dismissing the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) approving a final decree closing the Chapter 11 Case;

13.      paying all other expenses for winding down the affairs of the Debtor in accordance with a wind down budget or as otherwise agreed to by the Plan Administrator, and in the event of a dispute that cannot be resolved, resolving such dispute in the Bankruptcy Court, subject to the terms of the Plan;

14.  executing and delivering all documents, and taking all actions, necessary to consummate the Plan and wind down the Debtor's business;

15.  implementing and/or enforcing all provisions of the Plan; and

16.  exercising such other powers as may be vested in or assumed by the Plan Administrator, or as may be needed or appropriate, to carry out the provisions of the Plan.

### G.  Appointment of the Plan Administrator

The Debtor proposes that a qualified professional shall be appointed as the Plan Administrator. The Plan Administrator shall be deemed the Estate's sole representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

### H.  Fees of the Plan Administrator and Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with the Plan Administrator's duties shall be paid on a monthly basis without any further notice to or action, Order, or approval of the Bankruptcy Court, in Cash if such amounts relate to any actions taken hereunder; *provided* that the Plan Administrator will only be reimbursed for its reasonable and documented out-of-pocket costs and expenses in accordance with a budget that is acceptable to the Plan Administrator. In the interests of full disclosure, it is anticipated that the Plan Administrator will consider and may employ Debtor's current counsel to pursue some post-petition preference actions in light of those counsels' prior work on such actions and general familiarity with the case. Any such employment, to the extent made, would be under a standard and customary contingency fee arrangement.

### I.  Issuance of General Unsecured Creditor Interests

#### 1.  General Unsecured Creditor Interests

On the Effective Date or as soon as practicable thereafter, the Debtor shall deliver to the Plan Administrator a list of each Person to receive General Unsecured Creditor Interests as of the Effective Date pursuant to the Plan, including the Allowed amounts of the General Unsecured Claims of, and the address of, each such Person. On the Effective Date, the Debtor shall also deliver to the Plan Administrator a list of each holder of a General Unsecured Claim that is a Disputed Claim as of the Effective Date, including the maximum amount of each such Claim, and the address of the holder thereof.

#### 2.  Transfer of General Unsecured Creditor Interests

The Plan Administrator shall maintain a register of the holders of General Unsecured Creditor Interests and shall adjust, without further order of the Bankruptcy Court, the register from time to time as General Unsecured Claims that are Disputed Claims become Allowed.

Upon notice to the Plan Administrator by any holder of a General Unsecured Creditor Interest, the Plan Administrator shall amend the register to reflect any transfer of a General Unsecured Creditor Interest by such holder to a transferee as set forth in the notice.

### J.   Distributions to Holders of Claims and Interests

#### 1.   Estimation of Claims

The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

#### 2.   No Recourse

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing  in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

**THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

#### 3.   Automatic Disallowance and Expungement of Certain Claims

On the Effective Date, all Claims filed after the applicable Bar Date that were  required to be filed in advance of such Bar Date, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

4.        **Distributions on Account of Allowed Claims**

Following the Effective Date and in accordance the Plan, Distributions shall be made as follows:

On the Effective Date, or as soon as practicable therafter, the Debtor shall distribute Assets to its senior Secured lenders on a priority basis in alignment with any Administrative and other priority claims required to be distributed.

On the Effective Date, or as soon as practicable thereafter, the Debtor shall establish: (i) the General Unsecured Creditor Funding Reserve with the Sale Proceeds, if any remaining; (ii) the Disputed Claims Reserve with Cash in an amount to be determined by the Plan Administrator; and (iii) the Administrative Claims Fund with Cash in an amount sufficient to pay certain Allowed Administrative Claims, if any Assets are remaining.

On the Effective Date, or as soon as practicable thereafter, the Administrative Claims Fund shall be distributed to holders of certain Allowed Administrative Claims by the Plan Administrator. The Plan Administrator shall distribute Cash in an amount not to exceed the amount of each such unpaid Allowed Administrative Claim and each Professional Fee Claim, until such Claims are satisfied in full. Upon satisfaction of the Allowed Administrative Claims and Professional Fee Claims, the Plan Administrator shall administer all remaining General Unsecured Creditor Assets for the benefit of Allowed General Unsecured Claims, except as expressly set forth in the Plan.

a.   **Distributions on Account of Allowed Class 5 – General Unsecured Claims**

Provided that the holder of a Class 1 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 1 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, the holder of such Allowed General Unsecured Claim shall receive a Pro Rata Share of the General Unsecured Creditor Interests, if any Assets are remaining.

b.   **Distribution on Account of Allowed Class 4 - Convenience Class Claims**

Provided that the holder of a Class 2 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 2 that were Disputed Claims on the Effective Date and have thereafter become Allowed Convenience Class Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed Convenience Class Claims, or as soon thereafter as is practicable, the holder of such Allowed Convenience Class Claim shall receive a pro rata payment of the Allowed portion of its Claim, if any Assets are remaining.

### 5. Disputed Claims Reserve

#### a. Objections to Claims

Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Plan Administrator shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) 180 days after the Effective Date, (ii) 180 after the expiration of the Post-Petition General Unsecured Claims Bar Date for Claims accruing and filed, other than Administrative Claims, following May 12, 2025, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of the 180 day time period. The Plan Administrator's rights to request and receive and extension of his or her deadline to objection to claims are herein reserved. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if made (a) in accordance with Federal Rule of Civil Procedure 4, as modified, and made applicable by Bankruptcy Rule 7004; (b) by first-class mail, postage prepaid, on the signatory of the proof of claim or other representative identified in the proof of claim or any attachment thereto at the address of the Creditor set forth therein; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim or Cause of Action without further order of the Bankruptcy Court.

#### b. Resolution of Disputed Claims

No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

#### c. Establishment of Disputed Claims Reserve

The Debtor shall establish and fund the Disputed Claims Reserve with Cash in an amount to be determined by the Plan Administrator (or as otherwise required by order of the Bankruptcy Court). The Disputed Claims Reserve shall be administered by the Plan Administrator.

#### d. Duties in Connection with Disputed Claims

The Plan Administrator shall object to, settle, or otherwise resolve Disputed Claims, and shall make Distributions to holders of Disputed Claims that subsequently become Allowed Administrative Claims or Allowed General Unsecured Claims, in accordance with the Plan from the Disputed Claims Reserve.

#### e. Distributions When a Disputed Claim Is Resolved

On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive from the Disputed Claims Reserve any amounts attributable to such Claim, in accordance with the Plan. Any Cash held in the Disputed Claims Reserve for the benefit of a holder of a Disputed Claim, which is subsequently

disallowed, in whole or in part, shall become Available Cash for distribution in accordance with the provisions of the Plan.

### K.    Miscellaneous Distribution Provisions

### 1.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary herein or in the Plan, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

### 2.    *De Minimis* Distributions

The Plan Administrator shall not be required to make any Cash payment of less than twenty-five dollars ($25.00).

### 3.    Allocation of Payments

Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest, if any, that has accrued on such Claims but remains unpaid.

### 4.    Timing of Distributions

Each Distribution shall be made on the relevant Distribution Date therefore and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on any date specified herein.

### 5.    Manner of Payments under the Plan

Unless the Person or Entity receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Plan Administrator by check drawn on a domestic bank or by electronic transfer from a domestic bank.

### 6.    Authority to Setoff

The Plan Administrator is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Estate may hold against the holder of such Allowed Claim; provided, that the Plan Administrator gives the holder of such Allowed Claim notice in writing (including email) at the address listed on the respective filed Proof of Claim or listed on the Debtors' Schedules, as the case may be, of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days of receiving such notice. If an objection is timely raised to a proposed setoff, the Plan Administrator may seek relief from the Bankruptcy Court to effectuate the setoff. However, to the extent mail or email is returned undeliverable to the Plan Administrator, such setoff must occur by motion practice before the Bankruptcy Court. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Estate or the Plan Administrator of any such Claims, rights, and Causes of Action the Estate may have against such holder.

### 7. **Exemption from Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, including any deeds, bills of sale, or assignments executed in connection with the Sale or any other disposition of Assets contemplated by the Plan or the Sale Order, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

### 8. **Preservation and Application of Insurance**

The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

### 9. **Address for Delivery of Distributions**

Subject to Bankruptcy Rule 9010, any Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the registers maintained by the Plan Administrator as provided for in the Plan. If any Distribution is returned to the Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Plan Administrator is notified of such holder's then current address within sixty (60) days after such Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distribution shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan. The Plan Administrator shall require any holder of General Unsecured Creditor Interests or other distributee to furnish to the Plan Administrator in writing an Employer Identification Number or Taxpayer Identification Number as assigned by the Internal Revenue Service and the Plan Administrator may condition any Distribution to any holder of General Unsecured Creditor Interests or other distributee upon receipt of such identification number. If the Employer Identification Number or Taxpayer Identification Number are not provided by the required deadline established by the Plan Administrator, the Claim of any holder of General Unsecured Creditor Interests or distributee may be expunged and no Distribution will be issued by the Plan Administrator to such holder of General Unsecured Creditor Interests or distributee. The amounts owed to such holder of General Unsecured Creditor Interests shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.

### 10. **Federal Income Tax Consequences to the Debtor**

The Debtor does not anticipate that confirmation of the Plan will result in the Debtor being assessed or owing any Federal Income Tax. Confirmation will not trigger a taxable event. Moreover, the elimination of intercompany payables/receivables will not give rise to any cancellation of indebtedness income.

### 11. **Time Bar to Cash Payments**

Checks issued by the Plan Administrator in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for

reissuance of any check shall be in writing to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Plan Administrator on or before 90 days after the expiration of the 90-day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Estate and be treated as Available Cash. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate or the Plan Administrator.

### 12.    Record Date for Distributions to Holders of Claims

As of the close of business on the Effective Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution of Available Cash. The Debtor or the Plan Administrator, as applicable, shall have no obligation to recognize any transfer of Claims occurring after the Effective Date.

### 13.    Disputed Payments

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

### 14.    Resignation of Directors and Officers

Upon the Effective Date of the Plan, the Debtor's board of directors and officers shall be deemed to have resigned.

### 15.    No Agency Relationship

The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless arising from gross negligence, willful misconduct, or breach of fiduciary duty. The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of each of their, respective, duties under the Plan, except to the extent their actions constitute gross negligence, willful misconduct, or breach of fiduciary duty. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which they, respectively, believe to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may also rely upon information previously generated by the Debtor and such additional information provided to each of them, respectively, by former affiliates of the Debtor. The liability of the Plan Administrator shall be capped at the amount of fees that the Plan Administrator receives in connection with the Chapter 11 Case.

## VII.    EFFECT OF THE PLAN ON CLAIMS INTERESTS AND CAUSES OF ACTION

### A.    Binding Effect

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

### B.    Term of Injunctions or Stays

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

### C.    Preservation of Causes of Action

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate shall be transferred to and vested in the Plan Administrator, for the benefit of holders of all Allowed Claims, as set forth in the Plan unless expressly released, waived, or relinquished under the Plan, the Confirmation Order or other order of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Plan Administrator will not pursue a Cause of Action against them.

The Plan Administrator shall retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action, including, but not limited to, any and all Causes of Actions, of potential but unknown value.

For the avoidance of doubt all trade creditor preference or avoidance claims or actions of the Debtor, including, but not limited to any actions or claims arising under section 544, 547, 548 549 and 550 of the Bankruptcy Code and any other similar or corresponding claims or actions arising under state or any other law (collectively, the "Avoidance Actions") are hereby explicitly preserved.

No preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply to such Claims and Causes of Action by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan.

### D.    Injunctions

#### 1.    Satisfaction of Claims

The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

## 2.   Scope of Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, a Released Party (to the extent of the Release described in subsection G below), or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any Lien or Encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the Assets or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties or from pursuing third party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this Injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan or the Plan Administrator from pursuing and enforcing the Causes of Action.

## 3.   Cause of Action Injunction

On and after the Effective Date, all Persons other than the Plan Administrator, will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan.

## E.   Exculpation

**Except as otherwise set forth in the Plan, neither the Debtor nor the Exculpated Parties shall have or incur any liability to any Person or entity for any action taken or omitted to be taken between the Petition Date and the Effective Date in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Order, the Asset Purchase Agreement or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, the Sale, the Sale process, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case; provided, however, that such action taken or not taken by such Person or Entity was specifically on behalf of the Debtor and in conjunction with the Chapter 11 Case, provided further, however that the Exculpated Parties did not engage in fraud, gross negligence, willful misconduct, or acts performed outside the scope of section 1108 of the Bankruptcy Code not authorized by the Bankruptcy Court.**

## F.   Compromise of Controversies

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved

pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. Nothing herein is intended, nor shall be interpreted, to settle, resolve or release any claim of any non-debtor party against any other non-debtor party.

### G.    Releases by the Debtor

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released, solely in their capacity in acting on behalf of the Debtor or its Estate, by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising before the Effective Date, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the subject matter of, any Claim or Interest that is treated in the Plan, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Sale process, the Sale Order, the Purchase Agreement or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, in connection with the Chapter 11 Case, provided, however, that the Released Parties did not engage in fraud, willful misconduct, or gross negligence, taking place on or before the Effective Date.**

### H.    Post-Confirmation Activity

As of the Effective Date, the Plan Administrator may conclude the winding down of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan, and the Confirmation Order, as applicable. Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services, in connection with their respective duties, after the Effective Date without application to and approval of the Bankruptcy Court.

## VIII.    EXECUTORY CONTRACTS

### A.    Executory Contracts and Unexpired Leases

To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date that have not previously been assumed or rejected, or have not been assumed and assigned to Buyer, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

**B.    Post-Petition General Unsecured Bar Date**

Any Claim, other than an Administrative Claim, that arose after May 12, 2025, shall be forever barred and shall not be enforceable against the Debtors, their Estate, the Plan Administrator unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Plan Administrator not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

**C.    Rejection Damages Bar Date**

If rejection by the Debtor, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, the Plan Administrator unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Plan Administrator not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

**D.    Effect of Post-Confirmation Rejection**

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

**IX.    CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE**

**A.    Conditions to Confirmation**

The Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Plan Proponent.

**B.    Conditions to Occurrence of Effective Date**

The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions may be waived in whole or in part at any time by the Plan Proponent:

1.    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order.

2.    The Confirmation Order shall provide for the releases, injunctions and exculpation of the Persons provided for in the Plan.

**C.    Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date**

If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after fourteen

(14) days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

## X.    CONFIRMABILITY AND SEVERABILITY OF A PLAN

### A.    Confirmability and Severability of a Plan

Subject to the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan. If the Debtor revokes or withdraws the Plan, then nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any Persons in any further proceedings involving the Debtor. A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions therein are determined to be invalid and contrary to any existing or future law, the balance of the  Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

## XI.    ADMINISTRATIVE PROVISIONS

### A.    Retention of Jurisdiction

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

1.    To determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

2.    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

3.    To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

4.    To hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

5.    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

6.    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

7.    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

8.    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

9.    To hear and determine all matters relating to the Assets;

10.    To hear and determine all Professional Fee Claims;

11.    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

12.    To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release, exculpation or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

13.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

14.    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.    To enter a final decree closing the Chapter 11 Case;

16.    To recover all Assets of the Debtor and property of the Estate, wherever located;

17.    To hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders; and

18.    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

### B.    <u>Governing Law</u>

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of Tennessee, without giving effect to principles of conflicts of law of Tennessee.

### C.    <u>Continuing Effect of Sale Orders</u>

Notwithstanding anything in the Plan to the contrary, the Sale Orders and any and all related documents shall not be modified, limited, or amended by the Plan.

### D.    <u>Effectuating Documents, Further Transactions</u>

The Debtor or the Plan Administrator, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### E.    <u>Waiver of Bankruptcy Rules 3020(e) and 7062</u>

The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order, and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

### F.    <u>No Admissions</u>

Notwithstanding anything herein or in the Plan to the contrary, nothing contained in the Plan or in this Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

### G.    <u>No Discharge</u>

The Debtor will not receive a discharge under the Plan in accordance with section 1141 of the Bankruptcy Code.

**H.     Headings**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of provisions of the Plan.

**I.     Payment of U.S Trustee Fees and Other Statutory Fees**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan until such time as the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter 11 Case.

**J.     Governmental Carve-Out**

Nothing in the Plan or the Confirmation Order shall (i) effect a release of any Claim of, (ii) enjoin from bringing any Claim, suit, action or other proceedings by, or (iii) exculpate any party from any liability to, the United States Government or any of its agencies or any state or local government within the United States, arising under (v) the federal securities laws, (w) the Employment Retirement Income Security Act of 1974, as amended, (x) the Internal Revenue Code, (y) the environmental laws or (z) any criminal laws of the United States.

**K.     Disposal of Books and Records**

The Debtor's or Plan Administrator's rights, as applicable, to seek authorization from the Bankruptcy Court for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained are preserved.

**L.     Amendments**

**1.     Pre-Confirmation Amendment**

The Debtor may amend the Plan at any time  prior to the entry of the Confirmation Order, provided the amended Plan and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

**2.     Post-Confirmation Amendment Not Requiring Resolicitation**

After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided: (i) the Debtor obtains Bankruptcy Court approval of such modification, after notice and a hearing; and (ii) such modification shall not  materially and adversely affect the interests, rights, or treatment of any Class under the Plan.

### 3.    Post-Confirmation Amendment Requiring Resolicitation

After the Confirmation Date and before the Effective Date of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtor complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

### M.    Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

### N.    Confirmation Order and Plan Control

To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan.

## XII.   ACCEPTANCE, CONFIRMATION, AND CONSUMMATION OF THE PLAN

### A.    General

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including: (i) the Plan classifies Claims in a permissible manner; (ii) the Plan complies with the applicable provisions of the Bankruptcy Code; (iii) the Debtor complies with the applicable provisions of the Bankruptcy Code; (iv) the Debtor has proposed the Plan in good faith and not by any means forbidden by law; (v) the disclosures required by section 1125 of the Bankruptcy Code have been made; (vi) the Plan has been accepted by the requisite votes of holders of Claims, (vii) the Plan is feasible and confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation is proposed under the Plan; (viii) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan (*see* below, "Best Interests of Creditors"); (ix) all fees and expenses payable under 28 U.S.C. § 1930 (relating to bankruptcy fees payable to the clerk of the Bankruptcy Court and U.S. Trustee Fees) have been paid or the Plan provides for the payment of such fees on the Effective Date; (x) if applicable, the Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, at the level established at any time prior to confirmation of the Plan pursuant to section 1114 of the Bankruptcy Code,

for the duration of the period that the Debtor has obligated themselves to provide such benefits; and (xi) the Debtor must have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor or as successor to the Debtor under the Plan, and the appointment to or continuance in such office by such individual must be consistent with public policy. Certain of the requirements for confirmation of chapter 11 plans are inapplicable here.

The Debtor believes that the Plan satisfies all of the applicable statutory requirements of chapter 11 of the Bankruptcy Code. Certain of these requirements are discussed in more detail below.

### B.    <u>No Need to Solicit Votes</u>

Pursuant to the Bankruptcy Code, only classes of claims against or interests of a debtor that are Impaired (within the meaning of section 1124 of the Bankruptcy Code) under the terms and provisions of a plan of reorganization or liquidation are entitled to vote to accept or reject a plan. A class is Impaired if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and  reinstating  maturity. Classes of claims and interests that are not Impaired are not  entitled to vote on a plan and, under section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted a plan.

### C.    <u>Feasibility of the Plan</u>

In connection with confirmation of the Plan, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to section 1129(a)(11), which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless the Plan provides for the liquidation of the Debtor. Since the Plan provides for the liquidation of the Debtor, the Bankruptcy Court will find that the Plan is feasible if it determines the Debtor will be able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient funds to meet its post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan, including sufficient funds for the Plan Administrator to liquidate the Debtor's remaining Assets and funding the General Unsecured Creditor Funding Reserve and the Administrative Claims Fund. The Debtor believes the Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code.

## XIII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain of the material federal income tax consequences expected to result from the implementation of the Plan. This summary does not address the federal income tax consequences to holders whose claims are entitled to payment in full in Cash under the Plan (*e.g.*, holders of Allowed Administrative Claims, Secured Claims, and Priority Claims). This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought. Legislative, judicial, or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the holders of Claims.

The following summary is for general information only. The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary also does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non- resident alien individuals.

**EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS in Circular 230, you are hereby informed that (i) any tax advice contained in this Disclosure Statement is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Tax Code, (ii) the advice is written to support the promotion or marketing of the transactions or matters addressed in the Disclosure Statement, and (iii) each holder of a Claim should seek advice based on its particular circumstances from an independent tax advisor.**

### A.    Federal Income Tax Consequences to the Debtor

The Debtor does not anticipate that confirmation of the Plan will result in the Debtor being assessed or owing any Federal Income Tax. Confirmation will not trigger a taxable event. Moreover, the elimination of intercompany payables/receivables will not give rise to any cancellation of indebtedness income.

### B. Withholding and Reporting

The Plan Administrator shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution or the Plan Administrator, as applicable, will issue an IRS Form 1099.

## XIV.   ALTERNATIVES TO CONFIRMATION OF THE PLAN

The Plan affords the holders of Claims Distributions in excess of those that would be received under chapter 7 of the Bankruptcy Code and thus, is in the best interests of such holders. If the Plan is not confirmed, however, the alternative would be the liquidation of the Debtor's remaining Assets and Distributions to Creditors under chapter 7, which will reduce recoveries due to the additional expenses attendant thereto. The Debtor believes that the Plan is better for Creditors than a chapter 7 liquidation.

## XV.   ALTERNATIVE PLANS OF REORGANIZATION

If the Plan is not confirmed, the Debtor or any other party in interest in the Chapter 11 Case could propose a different plan or plans (subject to limitations during the time within which the Debtor has the exclusive right to do so). Since substantially all of the Debtor's Assets are in the final process of being sold and the Plan is a plan of liquidation, the Debtor does not believe an alternative plan could provide greater recoveries than those provided in the Plan. Moreover, the filing of alternative plans would result in additional costs in administering the Chapter 11 Case and significant delays in distributions.

## XVI.   THE CONFIRMATION HEARING

**OBJECTIONS TO CONFIRMATION MUST BE SERVED SO AS TO BE RECEIVED BY THE FOLLOWING PARTIES ON OR BEFORE THE OBJECTION DEADLINE:**

| If to the Debtors: | If to Counsel to the Debtors: |
|---|---|
| Poole Funeral Home Real Estate, LLC<br>c/o Brian Poole<br>3000 Ralph Buckner Blvd.<br>Cleveland, TN 37311 | Roy Michael Roman<br>**RMR Legal PLLC**<br>70 N. Ocoee Street<br>Cleveland, TN 37311<br>Telephone:  (423) 528-8484<br>Fascimile:  (423) 717-5564<br>E-mail:  roymichael@rmrlegal.com |
| **If to the U.S. Trustee:** | |
| David Holesinger<br>Office of the United States Trustee<br>Historic U. S. Courthouse<br>31 East 11th Street, 4th Floor Chattanooga, TN 37402<br>423-752-5153<br>david.holesinger@usdoj.gov | |

**ANY OBJECTION TO CONFIRMATION MUST BE IN WRITING AND (A) MUST STATE THE NAME AND ADDRESS OF THE OBJECTING PARTY AND THE AMOUNT OF ITS CLAIM OR THE NATURE OF ITS INTEREST AND (B) MUST STATE WITH PARTICULARITY THE NATURE OF ITS OBJECTION. ANY CONFIRMATION OBJECTION NOT TIMELY FILED AND SERVED AS SET FORTH HEREIN SHALL BE DEEMED WAIVED AND SHALL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

## XVII.  <u>CONCLUSION</u>

The Debtor submits that this Disclosure Statement and the Plan comply in all respects with chapter 11 of the Bankruptcy Code.

*[Remainder of page intentionally left blank]*

DATED:    Cleveland, Tennessee
          January 22, 2026

Respectfully submitted,

*/s/       Roy Michael Roman*
          Roy Michael Roman (TN BPR #042658)
**RMR Legal PLLC**
70 N. Ocoee Street
Cleveland, TN 37311
Telephone:      (423) 528-8484
Facsimile:      (423) 717-5564
E-mail:         roymichael@rmrlegal.com

*Counsel to the Debtors and Debtors in Possession*